[File No. 6469.]

EARL STONEHOUSE, Respondent, v. GEORGE A. MERSIOVS-KY, Clarence Warren and Russell H. Thompson.

GEORGE A. MERSIOVSKY, Appellant.

(274 N. W. 313.)

Opinion filed June 23, 1937.

Chas. A. Lyche, for appellant.

Earl Stonehouse, in pro. per.

NUESSLE, J. This is a statutory action to quiet title. Comp. Laws 1913, §§ 8144 et seq. The plaintiff alleges that he is the owner of the property involved; that the defendant is in possession under a claim of interest therein; and plaintiff prays that title be quieted in him and that he be put in possession. The defendant, Mersiovsky, answering, denies generally the allegations of the complaint, and, asking affirmative relief alleges that he is the owner of the property in question as the grantee of a mortgagee thereof who obtained title through foreclosure; that his grantor was the mortgagee in a certain mortgage wherein the mortgagor intended to mortgage the property involved but through inadvertence and mutual mistake omitted the same; that such mortgage was thereafter foreclosed and there being no redemption sheriff's deed was duly issued to his grantor; and he prays that the said mortgage and the foreclosure proceedings thereon be reformed to include the said property and that title thereto be quieted in him. The plaintiff in his reply denies the allegations contained in the answer excepting that he admits the execution and subsequent foreclosure of the mortgage through and under which the defendant claims title, but alleges that the property in question was not intended to be and was not included in such mortgage.

The case was tried to the court. Judgment was ordered and entered for the plaintiff and the defendant Mersiovsky appeals.

The land involved is in Grand Forks county. It is described as the west ten (10) rods of the east thirty-four (34) rods of the West Half of the West Half ($W\frac{1}{2}W\frac{1}{2}$) of section three (3), and that part of the east thirty-four (34) rods of the West Half of the West Half ($W\frac{1}{2}W\frac{1}{2}$) of section ten (10), lying north of the Great Northern railroad right of way, all in township one hundred and fifty-one (151), range fifty-four (54).

In 1917 and thereafter, Anthony Stonehouse, the father of the plaintiff, owned the tracts in dispute together with other portions of sections 3 and 10 adjoining them. This farm was known as the Crystal Spring Stock Farm. In November, 1920, Anthony Stonehouse executed a mortgage on the other lands in sections 3 and 10 owned by him and which adjoined the tracts here involved on the east. This mortgage ran to Anne M. Denniston, as mortgagee. It was given to secure an indebtedness owing by Stonehouse to Charles Denniston, the husband of Anne, in the sum of $15,000, payable on November 1, 1925, with interest at the rate of 7 per cent per annum, payable annually. Stonehouse and Denniston were old acquaintances. It appears that at the time the mortgage was given the indebtedness secured by it had been in existence for some time. The mortgage was given voluntarily by Stonehouse and not at the insistence or request of Denniston. There is nothing in the record to indicate that Denniston or his wife, the mortgagee, were aware that the mortgage was being executed or knew what property was covered by it until after it had been sent forward to them. In any event, after its execution it was mailed by Stonehouse to Denniston. Stonehouse, who began the letter accompanying the mortgage "Dear Charley" and signed it "Anthony," among other things wrote therein: "I am enclosing herewith note and mortgage for $15,000. If you feel that it is safe for you not to record the mortgage I would a little rather that you did not do so as I do not care to have the publicity. . . ."—In fact it was not recorded until October, 1926. Shortly after the mortgage was given Denniston died. His widow married the defendant. On March 30, 1929, the mortgage was foreclosed by advertisement. Apparently the interest had been paid up to within about a year prior to that time. The mortgagee, Mrs. Mersiovsky, bid the property in for $16,378.57, the amount of the mortgage debt and costs and received a

sheriff's certificate of sale. There was no redemption from the sale and in due course, on May 14, 1930, a sheriff's deed was issued to her. Thereafter she deeded to the defendant who is the present owner. In May, 1927, Anthony Stonehouse and his wife by warranty deed conveyed the property in dispute, together with that mortgaged to Denniston, to one Collinson, their son-in-law. They covenanted that the land thus conveyed was free from all encumbrances except those of record. There is no evidence that this transfer was not in good faith and for value. Apparently foreclosure of the mortgage was not then imminent. About 900 acres of land was covered by the mortgage, and while there is no testimony as to what it was then worth, Stonehouse covenanted in the mortgage to keep the buildings insured for at least $20,000. The taxes must have been paid up to date for Collinson put his deed of record. In November, 1933, Collinson, by warranty deed, conveyed the property, the subject of the instant suit, to his brother-in-law, the plaintiff Earl Stonehouse. Anthony Stonehouse died in 1930. This action was begun in January, 1934.

The defendant, claiming as the grantee of Anne M. Denniston, the mortgagee who took title through the foreclosure of the mortgage executed by Anthony Stonehouse, contends that at the time the mortgage was executed and delivered the tracts now in dispute, together with the property described in the mortgage, constituted the Crystal Spring Stock Farm; that the mortgage was intended to cover the whole of said farm including the property in dispute; that through inadvertence and mutual mistake the tracts in question were omitted from said mortgage; that the plaintiff Earl Stonehouse knew his father intended to include the said property and knew of the mistake and inadvertent omission thereof; that the conveyance from the Stonehouses to Collinson was not in good faith and without consideration. On the other hand, the plaintiff contends that there was no inadvertence or mutual mistake; that when the mortgage was executed and delivered there was no intention to include the property now involved therein; that the land in fact mortgaged was ample security for the debt and that when the same was bid in for the full amount of the debt the obligation was paid and discharged; that the conveyance to Collinson was for a consideration and in good faith and by virtue of

the deed from Collinson to plaintiff the latter became the owner of the property now involved, taking the title that Collinson had.

The trial court found that at the time of the execution of the mortgage to Denniston, the mortgagor did not intend to include the disputed property. We have examined the record carefully. The statement of facts heretofore given with respect to the transaction is necessarily much abbreviated. Anthony Stonehouse the mortgagor, Anne Denniston the mortgagee, and Charles Denniston are dead. It appears that the defendant or his grantor, claiming under the sheriff's deed, went into possession of the whole farm, including the disputed premises. Anthony Stonehouse was then physically and mentally incapacitated and died shortly thereafter. Earl Stonehouse the plaintiff knew that the defendant or his grantor claimed the tract in dispute for he wrote to them attempting to lease or buy it. There is other circumstantial evidence tending to sustain the defendant's contention that the mortgagee intended to include the disputed tract in the mortgage. But, on the other hand, there is the positive and certain direct testimony to the contrary by a disinterested witness who drew and acknowledged the mortgage. He testifies positively as to what was said and done at the time the mortgage was executed and that Stonehouse expressly withheld this tract from the mortgage. The trial court found for the plaintiff with respect to this matter. Its finding is entitled to appreciable weight. Lakota Mercantile Co. v. Balsley, 60 N. D. 768, 236 N. W. 631; and cases cited; State ex rel. Railroad Comrs. v. Burt State Bank, ante, 115, 270 N. W. 91. Accordingly, considering the whole record, this finding should not be disturbed.

But the trial court did not rest his order for judgment in favor of the plaintiff on these facts thus found by him. He found also that Collinson was a bona fide transferee of the property in dispute under his warranty deed from Anthony Stonehouse and his wife. There is nothing in the record from which any inference can be drawn that Collinson knew or should have known that the disputed property was included or was intended to be included in the Denniston mortgage; neither is there any reason to doubt his good faith in the purchase or that he paid a substantial consideration for the property that

was conveyed to him. It must be remembered that at the time of this conveyance Stonehouse was in possession of the farm. The interest must have been paid on the mortgage. The taxes were kept up. The mortgage which was of record did not include the property in dispute. So far as the record shows there was no assertion by the mortgagee or by anyone for her of any claim to this property until after the sheriff's deed was issued. The finding of the trial court in this regard is amply warranted by the evidence. No other finding could reasonably be made. The trial court held that since Collinson was a good faith purchaser of the property for a consideration his subsequent conveyance to the plaintiff gave the latter a title good as against the defendant whether or not the plaintiff knew of any adverse claims on the part of the defendant. This holding of the trial court was right. Since Collinson had good title as a bona fide purchaser without notice he could convey such title to the plaintiff. Plaintiff was not a party to the transaction between Anthony Stonehouse and Denniston; nor to that between Anthony Stonehouse and wife with Collinson. There can be no charge of fraud so far as he was concerned. The rule generally is that one, purchasing land from another who acquired the same in good faith and without notice of any adverse claims, stands in the same position as his grantor. See 66 C. J. pp. 1188 et seq.; 27 R. C. L. pp. 684 et seq., and cases cited in the Notes. "A grantee from a bona fide purchaser stands in the same position as the grantor, and will be equally favored by a chancellor, although affected with notice at the time of the grant. The grantor's conscience is clear, and he may transfer that which he might honestly retain. The rule is not less politic than just, because the jus disponendi would otherwise be clogged by a restraint of indefinite duration." Henninger v. Heald, 52 N. J. Eq. 431, 29 A. 190.

The judgment must be and it is affirmed.

CHRISTIANSON, Ch. J., and BURR, and MORRIS, JJ., concur.